of America, et al. Mr. Peterson for the appellant, Ms. Rubin for the appellees. Good morning. May it please the Court. The Anti-Injunction Act seeks to prevent a litigant from throwing a wrench into the gears of the tax assessment and collection system. What it does not do, however, is prevent a person who may be facing a tax assessment from gathering or assembling his or her defenses to that assessment. As long as they do that, without throwing a wrench into the gears of tax collection, the Anti-Injunction Act does not bar the lawsuit. This Court has recognized that distinction in other cases, such as Z Street v. Koskinen, and we're asking the Court to recognize it here. Z Street was quite different from this case, because Z Street, the concern that the plaintiffs were seeking to litigate was their claim that the government was treating them differently and slowing down the process because of their views about the Middle East. There's nothing that the Court would decide in that case that could affect their tax liability. It only related to the timing of the grant of the tax exemption. Whereas here, if you prevail on your argument about your permit, that means that you don't have to pay your tax, right? Not necessarily, Your Honor. This case is not that different from Z Street. In Z Street, they brought an action under the APA to compel action which was unreasonably delayed. The processing of a license application. What we're doing here is proceeding under the APA to compel action unlawfully with help. Now, I don't know whether we're going to have to pay tax or not at the end of this. If the government's tax assessment is based solely on the notion that we did not have a valid warehouse license or valid alcohol permits, then we very well may face an assessment. Was there anything in the record that indicates it isn't? Pardon me, Your Honor? There's nothing in the record. In fact, as I read the record, they not only said that the permit had automatically expired, but they gave your client a completed tax return, right? Well, just to pay the tax. They're directly related to each other. Well, we don't agree that the permit automatically expired. The regulation in question requires... Well, let's assume you won, if you won on that, that it didn't automatically expire. The consequence of that would be you wouldn't owe the tax. That's just like all the cases, Americans United and all the rest of them, which is, you know, if they're right that they're entitled to their tax exemption, then they don't have to pay the tax. But Your Honor, there's a difference between trying to enjoy the collection of the tax and trying to assemble what you need to defend yourself from an assessment. Let's suppose a taxpayer was told by a tax auditor, we're going to deny you business deductions for carrying on a business because you don't have your federally issued license to carry on that business display or that license has lapsed. So that taxpayer is facing an assessment down the road. Now, if that taxpayer turned around and filed a Freedom of Information Act request to get a copy of their license or filed an action with the licensing agency to have the license reinstated, that would not violate the Anti-Injunction Act at all. At the end of the day, the federal tax gathering machinery operates as it is doing in this case. And at some point, Gulf Marine will have an opportunity to defend itself. And if one of the claims in that proceeding is that you did not have a valid permit, and we are able to vindicate that, yes, we did have a valid permit, then we wouldn't pay tax. But we're not enjoining the assessment or collection of the tax. We're simply trying to establish our defense to an assessment that may be coming down the line. And there's a very big difference. We do not seek to enjoin any sort of tax collection. What action do you think was unlawfully withheld here? Well, Section 558 of the Administrative Procedure Act gives an important statutory right to all federal license holders. It says that before the agency can start actions to revoke or suspend a license, they've got to give you advance notice of the charges, which wasn't done here. Well, that's true. But here, we don't have revocation or suspension. At least it's not clear to me that we do. Because my understanding is that this was automatically terminated. Well, no. We have revocation or suspension. Nothing automatic. We have revocation or suspension because the agency charges that we did not meet an information supplying requirement in Section 144.107 of its regulations. What they are saying is that they believe we were required to report a change in ownership. Now, we contend there was no change in ownership. One of the owners died. His shares went to his wife. They were family members of an S corporation, which the Internal Revenue Code treats as a single shareholder. But what they came and said is, no, you were okay. Under the APA, before they could revoke our permit for not giving them the information under Section 550AC, they were required to give us an opportunity to demonstrate compliance, which means we go in and TTB has a regulation, 71.35. This is the hearing where you get to demonstrate compliance with the requirements. Now, maybe we would have convinced them and maybe we wouldn't. I don't know. But the other part of 553 is just as important. They have to give us the opportunity to achieve compliance. So if when we have the 71.35 hearing, they listen to our arguments about why we weren't required to file a new permit application and sit back and say, well, we disagree. Well, then the statute says we have the right to achieve compliance, presumably by filing an application for new permits. It seems an awfully complicated way to get to where you want to be. Why isn't this the case that the TTB letter was a final determination that an automatic termination had occurred, and you go to district court to contest final agency actions? What's wrong with that thinking? It's simpler, but simpler isn't always right. If we said we're not going to insist on our pre-termination rights, treat it as a termination, and said we're just going to file a straight APA action to reinstate the license. You'd get to district court that way, right? We would have gotten to district court, and I believe there'd be two problems. First, I suspect the government would say that that action, too, violates the Anti-Injunction Act. And secondly... I'm talking about the alcohol permit. Oh, well, the alcohol permit, I think the answer there is really simple. This court has direct jurisdiction over an appeal to revoke an alcohol permit. Yeah, but this isn't a revocation. No one has said this is revocation. Drop the revocation argument, but where are you? People disagree with your revocation. Okay, this court has jurisdiction over a case where the Secretary of the Treasury or its delegate has conducted a hearing, has issued an order on TTB form 5000.3, and then we would petition to this court, and this court would decide it on the basis of the record before the Secretary. If it had been revoked by the Secretary. Oh, sorry. If it had been revoked by the Secretary. Right, and it hasn't been revoked by the Secretary. We don't have a form 5000.3 here. That's the point of touch with this question. This was an You said there was a simple answer to this. I thought there was a simple answer to this, too. I'm talking about the alcohol side. Why don't you just apply for a new permit? There's no tax consequences to this, right? It's not like... Why didn't your client just apply for a new permit instead of all this litigation? I suspect they would be denied. I suspect they would be denied on the ground. You would have something to appeal. Why do you suspect they would be denied? How do you know unless... I mean, it just seems that they said it had been revoked, it had expired, and it had been automatically terminated. So, since there's no tax question, right, with respect to the alcohol side of it, right? Just apply for a new one. If it's turned down, then you have something to appeal. Well, that's possible, but bear in mind that both the alcohol and the tobacco permits are subject to USC 558, which gives pre-importation opportunity for correction or compliance before things are revoked. I understand that. I just don't understand why you fight a battle you may not need to fight in order... I mean, you may well have a right... In fact, I'm going to ask the government this. It does seem to me that you did have a right under the APA in district court with respect to the alcohol permit because you were told by the agency that it had expired. The appeal provision to this court doesn't apply. So, it looks to me like maybe the government has an explanation for this that you should have litigated this in the district court. Okay. But my antecedent question is why spend all the effort and money to file an APA case when you could have just applied for a new permit? Because the revocation of the old permits was not based on automatic termination. It was based on a claim change in ownership, which we think did not happen. Wait, the statute says if the ownership changes, then it's automatically terminated. That's what this... Well, again, the lower court dismissed this case for lack of jurisdiction. While the government argued in the lower court that the We think if you look at the triggering regulation, 44.107, it's not that simple. There has to be a change in share ownership, which didn't occur here. It has to change the ownership or control. That's what I'm getting at. The TTV made that determination. You challenge that in APA action. You say that's final agency action. You challenge that in district court. You go to district court and you say, no, they're wrong. There wasn't, in fact, a change in control of ownership. I'm puzzled as well by this. They have a regulatory mechanism, section 71.35 of their regulations. When they come forward to us and say, yeah, we think it was revoked. Well, then if they say we're going to revoke your license, they have to give us notice, the 71.35 hearing. That's all we're asking for here today. We want this remanded to the lower court with instructions to accept jurisdiction and send it to TTV for the 71.35 hearing we deserve. Okay. Anything else? Okay, thanks. We're here for the government. Good morning, your honors. So if Gulf Coast does what you think they should do and pays a tax and and gets their permit restored in that suit, will they automatically not have to pay the tax? For the majority of the taxes, yes. There's a portion of the taxes that we have two grounds for taxation. But for the vast majority of taxes, the determination that there was no automatic termination would resolve taxes. And in fact, Gulf Coast agreed with this analysis in its reply brief. If you look at page 22, where they say, hey, the only way the Anti-Injunction Act can apply here is if there was an automatic termination and retroactive taxation, which I'm not sure that I agree with their Anti-Injunction Act analysis there. But that point goes to very much the fact that as Ryo Machin said in the Sixth Circuit case, the permit scheme and the tax scheme are intertwined. And what you have here is a situation where deciding the question, was there an automatic termination or was there a revocation, which as ARCA points out, tells you whether you needed to do all this additional procedure that they say that they want. That actually determines a lot of the tax liability here. Did the government ever characterize this as a revocation? We do not. We have never characterized this as a revocation. We do not believe this is a revocation. We did not give a notice of proposed revocation or a notice of final revocation. We gave a notice that we believe that by the terms of the permits and under the laws, that there was an automatic termination in October. If that's the case, with respect to the alcohol permit, this is not the right court for that to be, right? I don't think that there's any court presently that has jurisdiction. Why not a district court? Why not just a straight APA court? If you look at United Distillers, it makes clear that this is an exclusive means of judicial review is in Section 204. Exclusive review for revocation, but there's no revocation here. The entire, if you look at the entirety of Section 204, it sets out the different ways that you can have a permit not be operative anymore, one of which is automatic termination, another of which is a suspension, revocation, withdrawal, or annulment. It then provides a judicial remedy only for denials of permits or orders suspending, revoking, or withdrawing. But what about the general final agency action? There's a final agency action here in which the TTB determined that there was an automatic termination. They come to district court to challenge that determination. Why is it more important? As well as under Section 702 of the APA, when you have a scheme of judicial review that is an exclusive scheme, that's what we submit we have here, and that's what United Distillers acted under. You can't use the APA to get around that exclusive means. And here, it clearly set out the parameters for judicial review. It has to be an order doing either a denial of a permit or a revocation. What's your authority for that? That's United Distillers versus Henderberry. Give me the citation of that case, please. Sure. Isn't that a 70-year-old district court case? That is a district court case. With all due respect to the order that was of the sort that there could be judicial review. It then did a proper petition to the D.C. Circuit, which then upheld everything that had happened in that case. And we submit that that's what should happen here. As the court suggested, maybe the answer here is just apply for a new permit. If it is granted, then you can say I think this should be but if it's denied, petition the court pursuant to 204-H. That's the answer. And on the tobacco permit, similarly, there's a route that they can get the question of whether there was an automatic termination or revocation decided through a refund lawsuit. And there's a suggestion in the reply brief that we had somehow said that, oh, well, that wouldn't mean you'd get your permit back, your tobacco permit back. That is simply not true. We have never said that. The pages cited address the alcohol permit. And in fact, our trial attorney below during the oral argument, this is document 21 at 42 to 43, conceded that under principles of res judicata, if in a refund suit they won the point that there was no automatic termination, that would be binding on the agency, including for whether the permit continued to exist past the date that we say that it automatically terminated. So your view is that an automatic termination is unreviewable? I'm talking about the alcohol permit. We submit not directly reviewable. It could be. What does that mean? Well, essentially what happens, let's say that this had been done normally. So you'd had a change in ownership. Wait, this wasn't normal? It was not normal because the normal thing, if you want to maintain your permit and. Oh, I'm sorry. I was, when I asked about normality, I thought I was referring to what the agency did. Is that normal for the agency? I'm talking about for the permit holder, your permit holder. They notify the agency. You notify the agency, you apply for a new permit. And your old permit stays alive until there's a decision on your permit application. If that application is granted, then you continue to have a permit. If it's denied, then you appeal. How did CTV determine that there was an automatic termination here? What was the and was the active manager of Gulf Coast who had, as Gulf Coast conceded in his complaint, had actual and legal control exercise that over Gulf Coast passed away. The record does not indicate how they learned that they had passed away. And then they sent some of their letters saying we have learned that Sam Geller passed away. So what's wrong with my formulation that they made that decision, they were making final determination, final agency action, that automatic termination occurred. What's wrong with that assessment? The assessment is that there's no mechanism by which the automatic termination of a permit is reviewable. No, that's not my question. That this was final agency action. It was a final decision made by the agency to say automatic termination occurred here. Do you dispute that that's what took place? We would say it wasn't really an agency action. It was a notice that, hey, we've learned that your permit terminated by its own terms. And we have lots of case law that says those sorts of decisions are final agency actions. We have learned that your license expired by its own terms. That's not a final agency action. That's a notice we've learned this. We're going to be taking some actions based on that. That certainly is final agency action. There are a lot of cases that look at decisions just like that and say it's a final agency action. It's a final decision made after gathering facts has legal consequences. It's a final agency action, I think. Well, even if it's considered to be a final agency action, the question as to whether a court has jurisdiction to hear it is going to have to be decided by a basis of looking at the law. And we submit that Section 204, 27 U.S.C. 204, provides an exclusive judicial remedy that is not... For revocations and denials, right? For revocations and denials. Right. And I thought we'd already established this isn't a revocation. This is a denial. That's right. But by excluding automatic terminations from that group of orders that can be reviewed... It just excludes it from review in this court. That's all it does. Let me ask you this. Suppose... We were talking about what's normal, what should have happened. If Gulf Coast had... And I'm only talking here about the alcohol permit. If Gulf Coast had simply reapplied, what would it have had to do to get its permit back? If it had reapplied, there would have been two different possible routes, depending on what the agency did. Okay. The first route would have been that the new permit was granted, and they could argue to the... First of all, then that would mean that going forward, they have this permit. They can legally purchase and import alcohol for reset, which we think would resolve the issue, period, because there's no tax consequences to what happened in the past. Right. If it was denied, then they would have the right to petition this on a timely basis for review of the denial of the alcohol permit. I see. That's the structure that the statute sets up. Okay. And that's the structure presumed that a permit holder is going to try to use, because under the automatic termination, the way that you prevent an automatic termination is you file an application for a new permit. The only reason why this is even a question is because you have somebody who tried to evade the statutory process by not filing a new permit application. And it's clear that there is a process set up by the statute. If there's a change in ownership, which we submit that there was, you file a new application, and it's through that new application that you either preserve your old application, or you attain the right to petition a court for review. Okay. This is not a situation where the statute has somehow ignored the situation. It created a judicial review process that Gulf Coast is trying to evade. Are there any further questions? Anything else? No, thank you. Did Mr. Peterson have any time left? You can take two minutes, Mr. Peterson. And I'm going to start your two minutes with a question. So, what's the matter with what Ms. Rubin just said with respect to the alcohol permit? Which is the right procedure here is to reapply. And if you don't get, if it's denied, then you can appeal to this court. Because it has to do with the dates that the alcohol permits were in effect. Now, you agree there's no tax consequences here, right? Nothing. Well, basically, Your Honor, what I'm going to get a new alcohol permit in 2017. Fine. If they issue a permit, I've got a permit starting in 2017. Okay. Right. They're going to go back, though, and they're going to say, but you didn't have a permit from 2013 to 2017, and there's legal consequences for that. And what are those? Presumably, some form of tax assessment. Wait. On the alcohol? Well, we pay, we pay. There wouldn't be any additional payments. But on the question of automatic... Wait a minute. First of all, you told me there would be tax liability, and then you just said there wouldn't be. Well, you didn't... You need to explain to me. I need to understand very clearly, if you reapply and don't get it, if you reapply and get it, what is... How are you... What is the harm to you other than your client, other than the fact that it operated for two years without permit? Yeah. I mean, the ruling's not going to say... Go ahead. What's the answer to my question? Well, potentially penalty. They may say you operated... What penalty? Is there a penalty in the statute? A penalty would be treated as a tax under the statute, and there are penalties for dealing in alcohol without a license. I see. If I could just say one thing. On the question of automatic termination, this was a funny automatic termination. From 2003 to 2016, TTP accepted our occupational taxes, they accepted our bonds, they accepted our monthly returns, they accepted whatever tax payments were sent to them. Now, they did that for three years, and in 2016, they turn around and say, oh, bang, you were dead three years ago. You were dead three years ago when you didn't report something in 2013. And they're saying, oh, that's an automatic termination. But under the facts of this case, I don't think you have an automatic termination. Because you have to be interested... I'm still confused about your answer to Judge Tatel's question, and so maybe if you could repeat it. So let's imagine that you did apply now for the alcohol permit and got it. Okay. What liability, what exposure do you have for having operated without a permit for two years or whatever period of time? What's the harm? What exposure do you have? If we were just acting to sell alcohol tax-paid, it would simply be, I think, a penalty exposure. If we were selling... Well, I don't think you can sell tax-free alcohol to a vessel, I'm not sure. But we would face penalty exposure. But I think our major exposure here is on the tobacco warehouse. Okay. I'm just asking about the alcohol. Okay. Thank you. Ms. Rubin, would you... Mr. Peterson, I'll give you a chance to respond to what I'm going to ask Ms. Rubin. Could you come on back up? So if they were to have applied, reapplied, I'm only talking about the alcohol. Okay. This is pursuing what both Judge Griffith and I were asking. Yes. Let's assume they reapplied and they got a new permit. Right. Okay. Would there be any consequences for having functioned without a permit for those two years? No one has identified any action that they're that the TTV is considering taking based on them not having a valid alcohol permit. You represent the agency, right? Right. I mean, could the agency take any action against them? Is there anything in the statute which would... I have not identified anything. But if you would like for me to consult with the agency and provide supplemental letter of brief on that, that might be... Well... But to my knowledge, I don't know of any tax consequences. Otherwise, we would have made the Anti-Injunction Act argument regarding the alcohol permits. Well, unless it's a penalty, right? Even if it's a penalty, though, because a penalty that's treated as a tax, as this court held in Florida Bankers Association, it's still covered by the Anti-Injunction Act. Okay. So your point is, as far as you know now, there's no liability or penalty on Gulf Coast for having operated for two years without a permit, except I suppose the agency could say, well, we're not going to give you a new permit, right? Could they do that? I suppose the fact that they failed to alert the Bureau... Well, isn't that what happened here? Yes. But that could be, I suppose, deemed relevant by the agency. But that would be up to the agency to decide if that's relevant. I certainly think it could be something that could be held irrelevant and failure to... My memory is, and don't trust my memory, is that in the letter that TTV wrote to Gulf Coast, it warned them that operating without a permit exposes you to civil and potential criminal penalties. Right. And so that's the hypothetical. That's the case we're talking about. If they were to apply now and get the permit, there'd still be a period of time in which they operated without a permit. And the government has already put them on notice that operating without a permit did that. I guess what I would say is a couple of things. First of all, I don't know of any agency actions being taken presently to go after Gulf Coast on the alcohol permit. That's not the question. If they were to be penalized, I'm sure that at that point they'd be able to get judicial review of the question as to whether they should have been considered to have had a valid permit from They could get judicial review. Okay. Did you have a question? Mr. Peterson, did you have anything you wanted to say in response? Just in response to what Ms. Rubin just... Nothing new. Just that. I believe she clarifies our liability as to potential civil and criminal penalties on the alcohol permit. One of my colleagues reminded me we did sell some alcohol untaxed paid through the warehouse. And again, regardless of the status of the warehouse permit, if we didn't have a basic alcohol permit, there'd probably be a tax liability for that. Okay. So the answer is yes, there would be consequences. All right. Thank you. Thank you both. The case is submitted.
judges: Tatel, Brown, Griffith